Philip T. Chen (State Bar No. 211777)
philip.chen@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Bryan S. Hales, P.C. (*pro hac vice*)
bryan.hales@kirkland.com
Eric Hayes (*pro hac vice*)
eric.hayes@kirkland.com
Thomas W. Osier (*pro hac vice*)
thomas.osier@kirkland.com
Ferlillia V. Roberson (*pro hac vice*)
ferlillia.roberson@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| HEMOPET,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>HILL'S PET NUTRITION, INC.<br><br>　　　　　*Defendant.*<br><br>**JURY TRIAL DEMANDED** | Case No. SACV 12-01908-(JLS-JPRx)<br>Action Filed: November 2, 2012<br><br>**HILL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 101, 102 AND NON-INFRINGEMENT**<br><br>DATE: November 14, 2014<br>TIME: 2:30 p.m.<br>COURTROOM: 10-A<br>JUDGE: The Honorable Josephine Staton |

1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2014 at 2:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Josephine Staton, United States District Judge, District Court for the Central District of California, Southern Division, 411 West Fourth Street, Courtroom 10-A, Santa Ana, CA 92701, Defendant Hill's Pet Nutrition, Inc. ("Hill's") will present its motion for summary judgment of patent invalidity under 35 U.S.C. §§ 101, 102 and non-infringement.  This motion is made following the conference of counsel that took place pursuant to L.R. 7-3 on September 11, 2014.

Respectfully submitted,

DATED: September 18, 2014          KIRKLAND & ELLIS LLP

 */s/ Bryan S. Hales*
Bryan S. Hales, P.C.

*Attorneys for Defendant*
*Hill's Pet Nutrition, Inc.*

Philip T. Chen (State Bar No. 211777)
philip.chen@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile: (213) 680-8500

Bryan S. Hales, P.C. *(pro hac vice)*
bryan.hales@kirkland.com
Eric Hayes *(pro hac vice)*
eric.hayes@kirkland.com
Thomas W. Osier  *(pro hac vice)*
thomas.osier@kirkland.com
Ferlillia V. Roberson *(pro hac vice)*
ferlillia.roberson@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

/s/ *Bryan S. Hales*

Philip T. Chen (State Bar No. 211777)
philip.chen@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Bryan S. Hales, P.C. (*pro hac vice*)
bryan.hales@kirkland.com
Eric D. Hayes (*pro hac vice*)
eric.hayes@kirkland.com
Thomas W. Osier (*pro hac vice*)
thomas.osier@kirkland.com
Ferlillia V. Roberson (*pro hac vice*)
ferlillia.roberson@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| HEMOPET, <br><br> *Plaintiff,* <br><br> v. <br><br> HILL'S PET NUTRITION, INC. <br><br> *Defendant.* <br><br> **JURY TRIAL DEMANDED** | Case No. SACV 12-01908-(JLS-JPRx) <br> Action Filed:  November 2, 2012 <br><br> **HILL'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 101, 102 AND NON-INFRINGEMENT** <br><br> DATE:  November 14, 2014 <br> TIME:  2:30 p.m. <br> COURTROOM:  10-A <br><br> JUDGE:  The Honorable Josephine Staton |

Hill's Pet Nutrition, Inc. ("Hill's") requests this Court grant its motion for summary judgment of patent invalidity under 35 U.S.C. §§ 101, 102, and non-infringement.  Specifically, Hill's moves pursuant to Fed. R. Civ. P. 56(a) for the following:

1.  Claims 1 and 2 of U.S. Patent No. 7,865,343, claims 1, 2, 9, and 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, and claims 1 and 8 of U.S. Patent No. 8,224,587 are invalid under 35 U.S.C. § 101;

2.  Claims 1, 2, 9, and 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, and claims 1 and 8 of U.S. Patent No. 8,224,587 are invalid under 35 U.S.C. § 102;

3.  Claims 1 and 2 of U.S. Patent No. 7,865,343, claims 1, 2, 9, and 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, and claims 1 and 8 of U.S. Patent No. 8,224,587 are not infringed;

4.  Hill's acts of using, selling, or offering for sale pet food products do not infringe claims 1 or 2 of U.S. Patent No. 7,865,343, claims 1, 2, 9, or 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, or claims 1 or 8 of U.S. Patent No. 8,224,587;

5.  The process that Hill's uses to manufacture pet food products does not infringe claims 1 or 2 of U.S. Patent No. 7,865,343, claims 1, 2, 9, or 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, or claims 1 or 8 of U.S. Patent No. 8,224,587; and

6.  Hill's identification of any ingredients prior to the issuance of the Asserted Patens does not infringe claims 1 or 2 of U.S. Patent No. 7,865,343, claims 1, 2, 9, or 10 of U.S. Patent No. 8,060,354, claim 1 of U.S. Patent 8,234,099, or claims 1 or 8 of U.S. Patent No. 8,224,587.

This motion is based on the Notice of Motion and Motion, the concurrently-filed memorandum in support of the motion, the concurrently-filed declaration of

Bryan S. Hales and the exhibits thereto, the concurrently-filed declaration of Dr. Jean Hall in support and the exhibits thereto, the concurrently-filed statement of uncontroverted facts and conclusions of law, and the complete files and records in this action, and such other evidence and argument as the Court may consider.

Respectfully submitted,

DATED:  September 18, 2014           KIRKLAND & ELLIS LLP


 /s/ Bryan S. Hales
Bryan S. Hales, P.C.

*Attorneys for Defendant*
*Hill's Pet Nutrition, Inc.*

Philip T. Chen (State Bar No. 211777)
philip.chen@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile: (213) 680-8500

Bryan S. Hales, P.C. *(pro hac vice)*
bryan.hales@kirkland.com
Eric Hayes (*pro hac vice*)
eric.hayes@kirkland.com
Thomas W. Osier  *(pro hac vice)*
thomas.osier@kirkland.com
Ferlillia V. Roberson *(pro hac vice)*
Ferlillia.roberson@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

/s/ *Bryan S. Hales*

Philip T. Chen (State Bar No. 211777)
philip.chen@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Bryan S. Hales, P.C. (*pro hac vice*)
bryan.hales@kirkland.com
Eric D. Hayes (*pro hac vice*)
eric.hayes@kirkland.com
Thomas W. Osier (*pro hac vice*)
thomas.osier@kirkland.com
Ferlillia V. Roberson (*pro hac vice*)
ferlillia.roberson@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| HEMOPET,<br><br>                     *Plaintiff,*<br><br>          v.<br><br>HILL'S PET NUTRITION, INC.<br><br>                     *Defendant.*<br><br>**JURY TRIAL DEMANDED** | Case No. SACV 12-01908-(JLS-JPRx)<br><br>**HILL'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 101, 102 AND NON-INFRINGEMENT**<br><br>DATE:  November 14, 2014<br>TIME:  2:30 p.m.<br>COURTROOM:  10-A<br>JUDGE:  The Honorable Josephine Staton |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

I.      THE NATURE OF THE PROCEEDINGS ..................................................... 3

II.     THE PRIOR ART DISCLOSES THE CLAIMED INVENTIONS .............. 3

III.    HILL'S ACCUSED RATIONAL DIET DESIGN PROGRAM ................... 4

ARGUMENT ...................................................................................................... 6

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT ................................ 6

II.     THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101
        FOR CLAIMING INELIGIBLE SUBJECT MATTER ................................ 6

        A.    Summary Judgment Under 35 U.S.C. § 101 Is Appropriate .................... 7

        B.    Abstract Ideas and Laws of Nature Are Not Patentable Subject
              Matter Under 35 U.S.C. § 101 ...................................................... 7

        C.    The Asserted Claims Are Directed To Ineligible Concepts .................... 7

        D.    The Asserted Claims Contain No Inventive Concept ............................. 9

        E.    The Generic Computer Elements Do Not Transform the Asserted
              Claims Into Claims Eligible for Patent Protection ............................... 14

        F.    Hemopet Seeks To Pre-empt the Field of Nutrigenomics ..................... 15

III.    THE ASSERTED CLAIMS OF THE '354, '587, AND '099
        PATENTS ARE INVALID AS ANTICIPATED BY PCT GHAI .............. 16

        A.    Summary Judgment of Anticipation Is Appropriate .............................. 16

        B.    PCT Ghai Is Prior Art to the '354, '587, and '099 Patents ..................... 17

        C.    PCT Ghai Discloses Each Element of the Asserted Claims of the
              '354, '587, and '099 Patents .................................................... 17

IV.     HILL'S DOES NOT INFRINGE THE ASSERTED PATENTS
        BECAUSE THE RDD PROGRAM DOES NOT INCLUDE THE
        CLAIMED SECOND DATA .......................................................................... 19

        A.    Summary Judgment of Non-infringement Is Appropriate ..................... 19

        B.    The Court's Construction of "Expression Of" Requires that the
              Claimed "Second Data" Be Phenotypic Data ...................................... 20

        C.    mRNA Data Is Not Phenotypic Data ................................................ 20

Hill's Pet Nutrition's Memorandum In Support of Its          i          Case No. SACV 12-01908-(JLS-JPRx)
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement

D.   The Accused Second Data in the RDD Program Is mRNA Data, Not Phenotypic Data ...................................................... 21

V.   **PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT IS WARRANTED** ....................................................... **23**

A.   Hill's Pet Food Products Do Not Infringe ............................... 23

B.   Manufacturing Pet Food Does Not Infringe the Asserted Claims ........... 24

C.   Hill's Pre-Patent Identification of The Key Ingredients Does Not Infringe ................................................................. 25

VI.   **CONCLUSION** ....................................................... **25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct.2347 (2014) ....................................................7, 9, 11, 12, 14, 15, 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................6

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S.Ct. 2107 (2013) ..............................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................6

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2010) .................................................................7

*Eclipse IP LLC v. McKinley Equipment Corp.*,
   No. CV 14-154-GW(AJWx),
   2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ...........................................7

*Eli Lilly and Co. v. Barr Laboratories, Inc.*,
   251 F.3d 955 (Fed. Cir. 2001) .................................................................16

*Genetic Technologies Limited v. Lab. Corp. of America Holdings*,
   CV 12-1736-LPS-CJB,
   2014 WL 4379587,  (D. Del. Sept. 3, 2014) .............................8, 10, 11, 12, 15

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .....................................................................................7

*Helifix Ltd. v. Blok-Lok, Ltd.*,
   208 F.3d 1339 (Fed. Cir. 2000) ...............................................................16

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991) .....................................................................6

*King Pharms., Inc. v. Eon Labs., Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010) ...............................................................16

*Leggett & Platt, Inc. v. VUTEK, Inc.*,
   537 F.3d 1349 (Fed. Cir. 2008) ...............................................................16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ...............................................7, 8, 10, 11, 12, 13, 14

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   503 F.3d 1352 (Fed. Cir. 2007) ...............................................................25

*Multimedia Patent Trust v. LG Elecs., Inc.*,
   No. 12-cv-2731-H (KSC)
   2013 WL 5779645 (S.D. Cal. Aug. 1, 2013) .............................................6

*PerkinElmer, Inc. v. Intema Ltd.*,
  496 Fed. Appx. 65 (Fed. Cir. 2012) ....................................................8, 10, 11, 12

*Planet Bingo, LLC v. VKGS LLC*,
  No. 2013-1663,
  2014 WL 4195188 (Fed. Cir. 2014, Aug. 26, 2014) ........................................15

*Schering Corp. v. Geneva Pharmaceuticals*,
  339 F.3d 1373 (Fed. Cir. 2003) ....................................................................17, 19

*SmithKline Beecham Corp v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005) ..........................................................................16

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ............................................................................20

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ................................................................................6

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001) ..........................................................................16

**STATUTES**

35 U.S.C. §§ 101 .............................................................................2, 7, 14, 25

35 U.S.C. §§ 102 ....................................................................................2, 25

35 U.S.C. §§ 102(b) ....................................................................................16

**OTHER AUTHORITIES**

Biological Science, 5th Edition at 258 ........................................................20

**RULES**

Fed. R. Civ. P. 56(a) .....................................................................................2

Fed. R. Civ. P. 56(c) .....................................................................................6

## **INTRODUCTION**

The named inventor of Hemopet's Asserted Patents in this case has stated that "I have secured the pioneer patents for nutrigenomics pet foods dating back to 1999.…As a result, I am effectively ***the gatekeeper to a concept***…." (Ex. 13, HEMOPET0005705) (emphasis added).[1]  But the law does not allow patents on concepts.  Nor does it allow patents that could be a "gatekeeper" to a field by purporting to cover any way of implementing abstract ideas.  Yet, the Asserted Claims attempt just that; they combine elements directed to naturally occurring phenomena (unpatentable) with abstract elements (unpatenable), which cannot be saved by the addition of a generic computer (unpatentable).  Recent Supreme Court and Federal Circuit decisions—issued after the U.S. Patent Office (PTO) examined the Asserted Patents—have advanced the law regarding unpatentable subject matter and leave no doubt that the Asserted Claims are invalid.  Hemopet's expert suggests that because the Asserted Claims involve highly complex and voluminous data, it somehow transforms patent ineligible subject matter into protectable inventive concepts.  But this view contradicts what Hemopet told the PTO during prosecution to overcome rejections, namely that "data is data" even if complex and of a large scale.  The fact is that nothing in the claim language goes beyond generic, abstract concepts.

Such contradictions pervade Hemopet's positions in this case.  On the issue of anticipation, Hemopet concedes that the PCT Ghai prior art reference—which the PTO did not consider when it examined the Asserted Patents—discloses all elements of the Asserted Claims of three of the four Asserted Patents, except the presence or use of a computer.  Hemopet argues that a computer is not inherently disclosed by PCT Ghai, even though PCT Ghai discloses the use of microarrays, a high throughput

---

[1]     Unless noted otherwise, exhibit numbers correspond to the Exhibits attached to the Declaration of Bryan S. Hales, filed concurrently with this motion for summary judgment and Hill's statement of uncontroverted facts and conclusions of law.

research tool.  That position directly contradicts Hemopet's own expert, Dr. Sutter, who admitted that using a microarray *necessarily* requires the use of a computer to handle the large volume of data, which meets the standard for inherency.

Regarding infringement, it is axiomatic that a patentee can be his or her own lexicographer and give whatever meaning he or she wishes to the terms in the patent. But because the public relies on what is said in the patent, the patentee must live with his or her prescribed meaning, even if it results in non-infringement.  During claim construction, Hemopet proposed a construction for "expression of" that contained the term "gene product."  The Court adopted Hemopet's proposal.  But Hemopet gave that term, "gene product," an expressly defined meaning in the specification, that it must include "phenotypic" information.  Thus, to satisfy the "expression of" element as proposed by Hemopet in the claimed "second data" and construed by the Court, Hill's activities accused of satisfying the "second data" element must have *phenotypic* information.  They do not, as they only have messenger RNA ("mRNA") expression data, which is *genotypic* information.  Unable to dispute what Hill's activities are, Hemopet seeks to avoid the consequences of its express definition and adopted claim construction through its expert's new argument that mRNA expression data is phenotypic.  That position is not supported by the specification and directly opposes statements made by its expert, Dr. Sutter, earlier in the case, namely that mRNA expression data is related to "*genotype* as contemplated by the patent." (Ex. 6, 6/19/14 Sutter at ¶ 83).

The Court should grant summary judgment of invalidity for lack of patentable subject matter, invalidity by anticipation, and non-infringement.  In addition, Hill's seeks partial summary judgment on three non-infringement issues that should not be controversial, but to which Hemopet would not stipulate:  (1) that Hill's use and sale of pet food does not infringe, (2) that Hill's process of manufacturing physical pet food kibble does not infringe, and (3) that Hill's work to identify key ingredients

Hill's Pet Nutrition's Memorandum In Support of Its
Motion for Summary Judgment Of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement

2

Case No. SACV 12-01908-(JLS-JPRx)

before the Asserted Patents issued does not infringe.  These points are plain from the claim language and governing law, yet Hemopet refuses to agree, apparently because of the way it seeks to use non-infringing activity to support its damages calculation methodology.  Whether the law supports Hemopet's damages methodology is for another day, but to avoid jury confusion and streamline the issues for trial, the Court should grant partial summary judgment of non-infringement on these points as well.

## BACKGROUND

## I.    THE NATURE OF THE PROCEEDINGS

Hemopet accuses Hill's Rational Diet Design program ("RDD") of infringing U.S. Patent 7,865,343 ("the '343 Patent"), U.S. Patent 8,060,354 ("the '354 Patent"), U.S. Patent 8,234,099 ("the '099 Patent"), and U.S. Patent 8,224,587 ("the '587 Patent") (together, "the Asserted Patents").  (D.I. 19; *see also* Exs. 1-4).  The Court issued its claim construction order on May 13, 2014 construing a number of claim terms.  (D.I. 76).  Trial is scheduled to begin January 27, 2015.  (D.I. 85).

Hemopet asserts claims 1 and 2 of the '343 Patent, claims 1, 2, 9, and 10 of the '354 Patent, claim 1 of the '099 Patent, and claims 1 and 8 of the '587 Patent (together, "the Asserted Claims").  (D.I. 87-1 at Page ID 1846-47).  The Asserted Claims are directed to comparing a "first data" to a "second data" and, based on the comparison, determining or preparing a nutrient or caloric composition for a canine or feline.  Both the "first" and "second" data occur in nature.  The "first data" is genomic data that corresponds to a physiological condition, and the "second data" is data relating to the effect of nutrients on the genomic data.  (*See* Exs. 1-4). Determining and preparing a nutrient or caloric composition, without more specificity, is an abstract idea under the law.

## II.    THE PRIOR ART DISCLOSES THE CLAIMED INVENTIONS

International patent application PCT WO 97/48823 to Ghai et al. ("PCT Ghai"), titled Methods of Screening Foods for Nutraceuticals, is remarkably similar to the

Hill's Pet Nutrition's Memorandum In Support of Its
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement                3                Case No. SACV 12-01908-(JLS-JPRx)

Asserted Claims.  Notably, although PCT Ghai is undisputedly prior art, the PTO did not consider PCT Ghai when it examined and issued the Asserted Patents.

The chart below shows exemplary Asserted Claim limitations on the left and PCT Ghai disclosures on the right, which essentially overlap one another.  Not surprisingly, Hemopet does not dispute that PCT Ghai discloses the claim limitations on the left.  (Ex. 7, 7/17/14 Sutter Report at ¶¶150-154).  As discussed below, Hemopet only disputes whether PCT Ghai discloses the claimed computer, computer software and database to carry out these limitations.

| Claim Limitations | Exemplary PCT Ghai Disclosures |
|---|---|
| *"first data relating the expression of at least one gene to a physiological condition…"* | "[a]ny gene or functional nucleotide sequence, including any expressed sequence tag (EST)…associated with or related to the development, onset, progression or other manifestation of any disease…in human or other animal" (Ex. 5 at 12:34-37). |
| *"second data compromising the effect of nutrition on the expression of at least one gene of the genomic map"* | data relating to "the effect of exposure to a food or food substance on the expression of disease-related gene(s) in cells" (*Id.* at 4:32-33). |
| *"determining a relationship between the first and second data"* | "ability of the food or food substance to modulate expression of a disease-related gene in an animal model" (*Id.* at 5:1-2). |
| *"preparing a nutritional diet product"* | "invention provides compositions comprising one or more nutraceuticals identified according to the method[s]" (*Id.* at 5:6-8). |

## III.  HILL'S ACCUSED RATIONAL DIET DESIGN PROGRAM

RDD is a Hill's internal software program research tool that produces data showing the effect of potential food ingredients on gene expression in animals.  (Ex. 10, K. Hahn Dep. at 15:6-22, 17:1-6, 33:18-25; *see also* Ex. 7, 6/19/14 Sutter Report

at ¶65).  RDD contains gene expression data from tissue studies and ingredient cell culture studies, and identifies the effect, if any, of potential food ingredients on gene expression profiles of animals.  (Ex. 8, S. Malladi Dep. at 49:12-15, Ex. 9, D. Jewell Dep. at 25:11-26:6).  Gene expression as measured by messenger RNA levels is the only response measured and collected during the ingredient cell culture and tissue studies.  (Ex. 9, Jewell Dep. at 25:9-18, 28:1-23; 31:15-20, 33:25-34:2; Ex. 8, S. Malladi Dep. at 20:7-21:3; Ex. B to Hall Decl.[2] at ¶¶65-67, 73-74, 77).  The output of RDD is a list of ingredients and the number of genes that were expressed in a favorable direction and the number of genes expressed in an unfavorable direction. (Ex. 6, 6/19/14 Sutter Report at ¶69).

Separate from RDD, Hill's also conducts feeding studies in which it feeds prototype diets to dogs and cats, and measures the gene expression profiles of the animals.  (Ex. 9, D. Jewell Dep. at 60:16-62:1, 62:21-63:10).  The gene expression measurements consist of messenger RNA levels taken from the animals. (*Id.* at 61:4-62:1, 62:21-63:10; Ex. B to Hall Decl. at ¶¶98-100).

In 2009, approximately two years before issuance of the first Asserted Patent, Hill's used RDD to identify three key ingredients—tomato pomace, carrot powder, and coconut oil—used in Hill's Metabolic pet food product. (Ex. 10, K. Hahn Dep. at 97:1-9,  96:17-22,  106:4-21).  Hill's identification of the three key ingredients established the Global Nutritional Standard for Metabolic, Hill's Science Diet Perfect Weight, Ideal Balance Slim & Healthy, Science Plan VetEssentials Neutered Dog, and the proposed multisystem pet food.  (Ex. 10, K. Hahn Dep. at 97:1-9, 96:17-22, 106:4-21).

---

[2]   Citations to "Ex. __, Hall Decl." refer to exhibits attached to the Declaration of Dr. Jean Hall, filed concurrently with Hill's motion for summary judgment and this statement of uncontroverted facts and conclusions of law.

**ARGUMENT**

## I.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   A party seeking summary judgment can establish the absence of a genuine issue of material fact in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of their case on which they bear the burden of proof at trial. *See Multimedia Patent Trust v. LG Elecs., Inc.*, No. 12-cv-2731-H (KSC), 2013 WL 5779645, at *6 (S.D. Cal. Aug. 1, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).   The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986). And "[t]he 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 265–66 (9th Cir. 1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## II.   THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 FOR CLAIMING INELIGIBLE SUBJECT MATTER

The Asserted Claims cover a method of determining a recipe for dog or cat food using two sets of data and a generic computer.  The two sets of data reflect naturally occurring phenomena, nothing that Hemopet invented.  And the way they are used is abstract, and seek to claim patent ownership of the mere use of a computer to perform conventional steps.  Under the law, the Asserted Claims are not patentable.

## A.    Summary Judgment Under 35 U.S.C. § 101 Is Appropriate

The question of whether a claim is directed to statutory subject matter is a question of law.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2010).  Although invalidity must be shown by clear and convincing evidence, patent ineligibility is a threshold issue that the Supreme Court has advanced significantly since the Asserted Patents issued.  *See e.g., Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *see also Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14-154-GW(AJWx), 2014 WL 4407592, *4 (C.D. Cal. Sept. 4, 2014) ("[T]he Supreme Court has spoken, and § 101 now plays an important limiting role.").

## B.    Abstract Ideas and Laws of Nature Are Not Patentable Subject Matter Under 35 U.S.C. § 101

"Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, [because] they are the basic tools of scientific and technological work".  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293 (2012) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).  In its recent *Alice* decision, the Supreme Court affirmed the framework to be used in order to distinguish ineligible patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts.  First, courts must "determine whether the claims at issue are directed to patent-ineligible concepts."  *Alice*, 134 S.Ct. at 2355 (citations omitted).  If the claims are directed to patent-ineligible concepts, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

## C.    The Asserted Claims Are Directed To Ineligible Concepts

The first step of the section 101 analysis requires examination of the Asserted Claims to determine if they are directed to patent-ineligible concepts.  The Asserted Claims are directed to the abstract concept of determining a nutritional diet for a

canine or feline based on naturally occurring relationships between physiological conditions and genomic data and the effect of nutrition on genomic data. Similar concepts have repeatedly been rejected as directed towards patent-ineligible subject matter.

In *Mayo*, the Supreme Court found claims for a method for measuring metabolites in the bloodstream in order to calibrate the appropriate dosage of thiopurine drugs in the treatment of autoimmune diseases to be directed to patent-ineligible concepts. *Mayo*, 132 S.Ct., at 1296-1297. In *PerkinElmer*, the claims covered a multi-step method of: (1) measuring the levels of certain biological markers from both the first and second trimester of pregnancy; and (2) determining whether an increased risk of Down's syndrome existed by comparing those markers. *PerkinElmer, Inc. v. Intema Ltd.*, 496 Fed. Appx. 65, 70-71 (Fed. Cir. 2012). The Federal Circuit concluded that the claims contained a patent-ineligible law of nature and specifically that "the relationship between screening marker levels and the risk of fetal Down's syndrome" is a "natural process, an eternal truth that 'exists in principle apart from any human action.'" *Id*. at 70 (quoting *Mayo*, 132 S.Ct. at 1297.) In *Genetic*, the claims were directed to a correlation between a particular genetic variation and sprinting, strength or power performance. *Genetic Technologies Limited v. Lab. Corp. of America Holdings*, CV 12-1736-LPS-CJB, 2014 WL 4379587, *10 (D. Del. Sept. 3, 2014). The District of Delaware in *Genetic* found that "the link between a particular genetic variation and the potential for elite athletic performance" is directed to a patent-ineligible concept. *Id.*

The Asserted Claims in the present case are directed to patent-ineligible concepts under these principles. They are directed to the abstract concept of applying naturally occurring relationships between physiological conditions and genomic data and the effect of nutrition on genomic data when determining a nutritional diet for a canine or feline. *See Mayo*, 132 S.Ct. at 1296-97 (rejecting the concept of reciting a

Hill's Pet Nutrition's Memorandum In Support of Its
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement
                                    8                    Case No. SACV 12-01908-(JLS-JPRx)

law of nature followed by an "apply the law" step.

### D. The Asserted Claims Contain No Inventive Concept

The second step in a Section 101 analysis requires an examination of "the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357 (citations omitted). Courts examining this question should look first to each step of the claim, and then to the claim as a whole. *Id.* at 2355. The Asserted Claims fail on both fronts. Claim 2 of the '354 patent is representative:

> 2. A system for determining a nutritional diet for a canine or feline companion animal comprising: a computer; at least one electronic database coupled to the computing system; at least one software routine executing on the computing system which is programmed to:
>
> (a) receive first data relating the expression of at least one gene to a physiological condition; wherein the data relating to the expression of the at least one gene includes genomic map data; and the genomic map data concerns the physiological condition of the animal;
>
> (b) receive second data comprising the effect of nutrition on the expression of at least one gene of the genomic map;
>
> (c) determine a relationship between the first and second data; and
>
> (d) determine nutritional content based on the relationship; and formulate a nutritional diet product for the canine or feline companion animal.

(Ex. 2 at claim 2).

As will be discussed, steps (a) and (b) describe naturally occurring phenomena, while steps (c) and (d) recite an abstract idea, with no detail or explanation of how to determine the relationship, determine the content or formulate the diet.

Hill's Pet Nutrition's Memorandum In Support of Its Motion for Summary Judgment Of Patent Invalidity Under 35 U.S.C. §§ 101, 102 and Non-Infringement

9

Case No. SACV 12-01908-(JLS-JPRx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1.      Each step of the claims is directed to ineligible subject matter**

**a.      Steps (a) and (b) reflect unpatentable natural phenomena**

The first and second steps are directed to receiving two sets of data.  The claimed first data is data relating the expression of genes to a physiological condition.  The claimed second data is data relating to the effect of nutrition on the expression of genes.  These claimed relationships are not patent eligible because they are naturally occurring.  *See e.g., Mayo*, 132 S.Ct. at 1297; *PerkinElmer*, 496 Fed. Appx. at 70; *see also Genetic*, 2014 WL 4379587 at *10 (noting that the claimed "correlation is the handiwork of nature—man did not do anything to bring about this relationship").

In *Mayo*, the claims recited relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug would prove ineffective or cause harm.  *Mayo*, 132 S.Ct. at 1296.  This relationship is a law of nature, the Supreme Court explained, because it "exists in principle apart from any human action."  *Id.* at 1297.  It did not matter to the Court that a human action (administration of the drug) was required to trigger a manifestation of the relationship, because the relation itself is an "entirely natural process[]"—a result of the way in which the body metabolizes thiopurine compounds.  *Id.*

Similarly, in *PerkinElmer*, the claims recited "the relationship between screening marker levels and the risk of fetal Down's syndrome."  *PerkinElmer,* 496 Fed. Appx. at 70 (Fed. Cir. 2012).  The Federal Circuit found that the relationship is a "natural process, an eternal truth that 'exists in principle apart from any human action.'"  *Id.* (citation omitted).  And likewise, the District of Delaware recently held "the link between a particular genetic variation and the potential for elite athletic performance [to be] a 'natural process, an eternal truth that exists in principle apart from human action.' " *Genetic,* 2014 WL 4379587 at *10.  Indeed, the Supreme Court last year made clear that even discovering a groundbreaking genetic relationship—a gene associated with increased risk for breast cancer—was unpatentable because it

Hill's Pet Nutrition's Memorandum In Support of Its
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement                10                Case No. SACV 12-01908-(JLS-JPRx)

was a product of nature.  *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2117 (2013).

The first data and second data elements of the Asserted Claims are naturally occurring like the elements in *Mayo*, *Myriad*, *PerkinElmer* and *Genetic*.  The genes associated with a particular condition are a product of nature, as is the expression of those genes.  Likewise, the effect a nutrient has on the expression of a gene is a product of nature.  Observing, receiving or recording those relationships is not the product of human ingenuity.  Indeed, Hemopet conceded it "didn't discover the molecular relationships between nutrition and the responsive genes in promoting health."  (Ex. 11, J. Dodds Dep. at 164:23-165:2; *see also* 143:11-15 (admitting that "it was known before [Dr. Dodds] did [her] work in 1999, that particular foods or substances could up- or down-regulate gene expression); *see also id.* at 166:8-12 (admitting that Dr. Dodds wasn't "the first person to disclose … the five basic concepts of nutrigenomics").).  Likewise, storing information about this natural relationship in a database (electronic or otherwise) does not transform the information to make it patent eligible.  *Alice*, 134 S.Ct. at 2359 (rejecting "the use of a computer to obtain data" or to perform "electronic record keeping" as eligible subject matter because they are "basic functions of a computer").  The claimed relationships in the first and second data are no different than the claimed relationships rejected in *Mayo*, *PerkinElmer*, and *Genetic*.

### b.    Steps (c) and (d) are unpatentable abstract ideas

Step (c) is directed to determining a relationship between the first and second data and step (d) is directed to determining and formulating a nutritional diet (*i.e.*, a particular nutrient or caloric composition) based on the relationship in step (c).  Recent cases from the Supreme Court and Federal Circuit make clear these elements are abstract ideas that are not patentable.  *Mayo*, 132 S.Ct. at 1302 (rejecting a "determining" step); *PerkinElmer*, 496 Fed. Appx. at 71 (same); *Genetic*, 2014 WL

Hill's Pet Nutrition's Memorandum In Support of Its    11    Case No. SACV 12-01908-(JLS-JPRx)
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement

4379587 at *11-13 (rejecting an "analyzing" and "predicting" step).

In *Mayo*, the Court rejected a "determining" step because it was "set forth in highly general language covering all processes that make use of the correlations after measuring metabolites…." *Mayo*, 132 S.Ct. at 1302. Elements (c) and (d) are analogous. The elements "determine a relationship," "determine nutritional content," and "formulate a diet product" are highly general and purport to cover any way of making use of the naturally occurring correlations of (a) and (b), just as in *Mayo*.

Similarly, in *PerkinElmer*, the Federal Circuit found that the "determining" step recited the "ineligible mental step of 'comparing the measured markers with observed relative frequency distributions of marker levels in Down's syndrome pregnancies and in unaffected pregnancies' to determine the risk of fetal Down's syndrome.'" *PerkinElmer*, 496 Fed. Appx. at 71. And in *Genetic*, the court found ineligible an "analyzing" step because it "essentially tells the user to analyze the sample through whatever known processes they wish to use." *Genetic*, 2014 WL 4379587 at *11.

As in *PerkinElmer* and *Genetic*, and like *Mayo* above, the elements here are claimed in "highly general language covering all processes that make use of the correlations" found between the first and second data. *Mayo*, 132 S.Ct. at 1302. Indeed, neither the patent claims nor the specification provide any detail whatsoever regarding how these steps are to be performed.

### 2. The Asserted Claims as a whole are directed to unpatentable subject matter

The Asserted Claims as a whole do not transform the ineligible claim elements into a patent-eligible inventive concept. *See e.g., Alice*, 134 S.Ct. at 2355. Instead, like the claims in *Mayo*, the claimed "combination amounts to nothing more than an instruction to doctors to apply the applicable laws when treating their patients." *Mayo*, 132 S.Ct. at 1298.

In *Mayo*, the claims covered processes that helped doctors treating patients with

autoimmune diseases determine whether a given dosage level is too low or too high using relationships between the concentration in the blood of certain metabolites and the likelihood that the drug dosage will be ineffective or introduce harmful side-effects. *Id.* at 1294. Here, the claims purportedly help one of ordinary skill in the art determine a nutritional diet for an animal having a physiological condition using the relationships between gene expression data and the effect of nutrition on the expression of genes associated with the physiological condition.

As in *Mayo*, the first three steps of the Asserted Claims "simply tell doctors to gather data from which they may draw an inference in light of the correlations." *Id.* at 1298. The final determining, formulating or preparing a particular nutrient or caloric composition step based on the data is not "sufficient to transform unpatentable natural correlations into patentable applications of those regularities." *Id.* "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Id.* at 1300.

Hemopet cannot dispute that the determination of a particular nutrient or caloric composition based on the claimed data is a conventional step in the art. During prosecution, Hemopet faced a lack of enablement rejection where the PTO alleged that the pending claims contained "subject matter which was not described in the specification in such a way as to enable one of ordinary skill in the art to…use the invention." (Ex. 15, '343 Pros. History, 2/23/10 Rejection at 8). In response, Hemopet submitted the declaration of Dr. Giger in an attempt to explain why no undue experimentation is required to practice the claims. (Ex. 16, '343 Pros. History, 4/13/10 Amendment at 19).

Dr. Giger declared that the claimed technology "is concerned with analyzing, selecting, designing and development of nutrition based on the effects of nutritional data with a data base of genetic parameters. ***This analysis, selection, design and***

*development is not complex, once the datasets are processed, which would likely have been quite straightforward for data analysts*."  (Ex. 18, 4/12/12 Giger Decl. at ¶ 14) (emphasis added).  This is exactly the type of post-solution conventional step that the Court in *Mayo* held does not transform laws of nature, natural phenomena, and abstract ideas into patent eligible subject matter.  *Mayo*, 132 S.Ct. at 1300.

### E.   The Generic Computer Elements Do Not Transform the Asserted Claims Into Claims Eligible for Patent Protection

During prosecution, Hemopet overcame a 35 U.S.C. § 101 rejection by reciting a generic computer and algorithm in the claims.  (Ex. 16, '343 Pros. History, 4/13/10 Amendment at 16). However, since the Asserted Claims were issued, the Supreme Court has made clear that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 134 S.Ct. at 2358.  "Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result."  *Id.* (internal citation omitted).   The specific claim limitations "a computer," "at least one electronic database coupled to the computing system," and "at least one software routine executing on the computer system" are "purely functional and generic."  *Id.* at 2360.  Nearly every computer includes "at least one electronic database coupled to the computing system" and "at least one software routine executing on the computing system."  *Id.*  As a result, none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computer.  *Id* .  As in *Alice*, the claims here recite no more than a generic computer, generic software or generic algorithm, or generic computer database.   These elements cannot transform the ineligible matter any more than they could in *Alice*.

Additionally, it does not matter if the volume of data is large and labeled

"genomic."[3]    During prosecution, in response to the same lack of enablement rejection mentioned above, Hemopet also submitted a declaration from James Spencer declaring "data is data" and "the analysis, selection, design and development of nutrition would have relatively been quickly apparent after the different data were uploaded and processed."  (Ex. 17, Spencer Decl. at ¶¶ 9, 7).  "Even though the volume of data may be large, or because the data may be labeled as 'genetic,' 'genomic' or medical or diagnostic data does not mean that the analysis is complex to a person regularly skilled in data analysis, nor would it have been complex in 1999." (*Id.* at ¶ 11).  Hemopet cannot save the claims by contradicting the positions it took during prosecution.

## F.    Hemopet Seeks To Pre-empt the Field of Nutrigenomics

In addition to the prescribed analysis above, the Supreme Court also requires analyzing whether the Asserted Claims improperly attempt to pre-empt an entire field. As such, when "examining whether a claim is patent eligible under Section 101, a court should consider whether the claim poses a risk of pre-empting the law of nature contained in the claim."  *Genetic*, 2014 WL 4379587 at *14; *see also Alice*, 134 S. Ct. at 2354.  Hemopet admits that it is seeking to pre-empt the use of nutrigenomics in determining nutritional diets for pets: its inventor Dr. Dodds asserts, "I have secured the pioneer patents for nutrigenomics pet foods dating back to 1999.  These are patents 7,865,343 and 8,060,354 … [a]s a result, I am effectively the gatekeeper to a concept…"  (Ex. 14, HEMOPET0005705).  According to Dr. Dodds, anyone who

---

3  Hemopet admits that even a handful of genes could be genomic in scale.  (Ex. 12, Sutter Dep. at 169:15-23).  As such, it is irrelevant that the claimed methods might include an example where thousands of genes are analyzed.  *See Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, *2 (Fed. Cir. 2014, Aug. 26, 2014) ("We need not, and do not, address whether a claimed invention requiring many transactions might tip the scales of patent eligibility, as the claims fall far short of capturing an invention that necessarily handles 'thousands, if not millions' of bingo numbers of players.").

wants to practice nutrigenomics with respect to canines and felines must follow the claimed process. (*Id.*)  As applied by Hemopet, the Asserted Claims pre-empt the entire use of nutrigenomics to determine a particular nutrient or caloric composition for a canine or feline.[4]  Such pre-emption is not allowed. *Alice,* 134 S.Ct. at 2354.

## III.   THE ASSERTED CLAIMS OF THE '354, '587, AND '099 PATENTS ARE INVALID AS ANTICIPATED BY PCT GHAI

### A.   Summary Judgment of Anticipation Is Appropriate

Summary judgment of anticipation is appropriate when the record reveals no genuine dispute as to whether the prior art reference discloses all the claimed elements. *Leggett & Platt, Inc. v. VUTEK, Inc.*, 537 F.3d 1349, 1352, 1356 (Fed. Cir. 2008); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).  Although the defendant has the burden to establish anticipation by clear and convincing evidence, summary judgment is nonetheless appropriate when no genuine issue of fact exists. *Eli Lilly and Co. v. Barr Laboratories, Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001); *see also SmithKline Beecham Corp v. Apotex Corp.*, 403 F.3d 1331, 1344 (Fed. Cir. 2005).

An anticipation analysis involves two steps: (1) the Court construes the claims and (2) the properly-construed claims are compared to the prior art.  *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346-47 (Fed. Cir. 2000).  The prior art anticipates a claim "if each and every limitation is found either expressly or inherently in a single prior art reference." *King Pharms., Inc. v. Eon Labs., Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010).  A prior art reference inherently discloses a claim element if the feature is "necessarily present" in that single anticipating reference.  *SmithKline Beecham,* F.3d

---

[4]  The fact that Hemopet seeks to pre-empt the use of nutrigenomics only for pets does not save the Asserted Claims.  *Alice*, 134 S.Ct. at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment") (citation omitted).

Hill's Pet Nutrition's Memorandum In Support of Its          16          Case No. SACV 12-01908-(JLS-JPRx)
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement

1331 at 1343; *see also Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (district court properly granted summary judgment of anticipation based on prior art inherently disclosing claim element).

### B.   PCT Ghai Is Prior Art to the '354, '587, and '099 Patents

PCT Ghai was filed on June 20, 1996, and published on December 24, 1997. (Ex. 5, PCT Ghai at Cover).  PCT Ghai is prior art to the '354, '587, and '099 Patents under 35 U.S.C. §102(b) because it was publicly available more than one year prior to the alleged earliest filing date of the Asserted Patents, October 1999.  Hemopet does not dispute that PCT Ghai is prior art to the Asserted Claims.  And there is no dispute that PCT Ghai was not before the PTO, and the PTO examiner was unable to consider PCT Ghai when examining the patents.

### C.   PCT Ghai Discloses Each Element of the Asserted Claims of the '354, '587, and '099 Patents

Hemopet does not dispute that PCT Ghai discloses the claim limitations of the '354, '587, and '099 Patents except the presence of a computer, computer software or databases.   The narrow dispute before the Court is whether PCT Ghai *inherently* discloses those computer elements that Hemopet contends are not expressly present.

#### 1.   Hemopet Asserts Only That PCT Ghai Fails To Disclose The Computer-Related Limitations of the Asserted Claims

Hill's expert, Dr. Jean Hall, explained that PCT Ghai discloses each and every limitation of the asserted claims of the '354, '587, and '099 Patents.  (Ex. A to Hall Decl. at ¶¶62-67, Exhibit F).   Hemopet's expert, Dr. Nate Sutter, provided a five-paragraph response to Hill's contention that PCT Ghai anticipates the '354, '587, and

'099 Patents.  (Ex. 7, 7/17/14 Sutter Report at ¶¶150-155).[5]  Dr. Sutter opines that PCT Ghai does not disclose the computer related elements, *i.e.*, a computer or software routines (¶151), a computer (¶152), software routines executing on a computing system (¶154), or using a suitably programmed computer or having a computer-readable medium or a software routine (¶155).  (Ex. 7, 7/17/14 Sutter at ¶¶150-155; Ex. 12, Sutter Dep. at 180:11-14,180:23-181:10, 184:4-7, 184:23-185:7, 185:14-21).  Dr. Sutter does not dispute that PCT Ghai discloses the steps of the claimed methods or that it discloses the claimed functionality of the systems; rather, he disputes that PCT Ghai discloses *using a computer or software routines* to carry out the functions.  (*See* Ex. 7, 7/17/14 Sutter Report at ¶¶150-155).  Thus, for the '354, '587, and '099 Patents, Dr. Sutter does not dispute that PCT Ghai discloses every claim element except for the presence of a computer. (Ex. 7, 7/17/14 Sutter at ¶¶150, 151, 152, 154, and 155; Ex. 12, Sutter Dep. at 185:14-21).

## 2.    PCT Ghai Inherently Discloses The Computer Elements

PCT Ghai discloses that "the expression levels of a large number of messenger RNAs can be simultaneously measured by the high throughput hybridization assays based on DNA arrays or DNA *microarrays*."  (Ex. 5*,* PCT Ghai at 8:22-34). Hemopet's expert, Dr. Sutter admitted that the express disclosure of microarray experiments inherently discloses, indeed necessarily requires, a computer, software and database be used:

Q.    *So in the context of a microarray experiment* based on the volume of information that a microarray requires, *we're necessarily*

---

[5] In paragraph 153, Dr. Sutter provides an additional alleged distinction over PCT Ghai, but it is applicable only to the '343 Patent.  (Ex. 7, 7/17/14 Sutter Report at ¶153; Ex. 12, Sutter Dep. at 183:4-184:2).  Though Hill's disagrees with Dr. Sutter, because he raised an additional technical distinction regarding the '343 Patent, to streamline this motion Hill's does not seek summary judgment of anticipation regarding the '343 Patent, and will present that at trial.

> *talking about requiring a computer to store and analyze that data; correct?*
>
> A.   *Yes*.

(Ex. 12, Sutter Dep. at 75:22-76:2) (emphasis added).  Dr. Sutter further confirmed that microarray experiments involve the use of databases and software routines.  (*Id.* at 74:1-15, 74:25-75:7).  PCT Ghai's disclosure of microarray experiments confirms that PCT Ghai inherently discloses the computer, database, and software lements of the asserted claims of the '354, '587, and '099 Patents.  PCT Ghai thus inherently anticipates these claims.  *Schering Corp.*, 339 F.3d at 1377 ("[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference.").  Accordingly, there is no genuine issue of material fact that PCT Ghai discloses all the claim elements and anticipates the asserted claims of the '354, '587, and '099 Patents.  Accordingly, this Court should grant summary judgment that PCT Ghai anticipates the Asserted Claims of the '354, '587, and '099 Patents.

## IV.   HILL'S DOES NOT INFRINGE THE ASSERTED PATENTS BECAUSE THE RDD PROGRAM DOES NOT INCLUDE THE CLAIMED SECOND DATA

Hill's non-infringement motion turns on one question—whether Hill's RDD program's use of mRNA data satisfies the "second data" claim element in light of the Court's claim construction that includes "gene product."   Given the Court's construction and the patentee's express definition of the term "gene product," the answer is no.

### A.   Summary Judgment of Non-infringement Is Appropriate

A literal infringement analysis requires two steps.[6]  First, the court interprets the claims as a matter of law to determine their meaning and scope.  *Southwall*

---

[6]   Hemopet does not assert infringement under the doctrine of equivalents.

*Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  Second, the trier of fact determines whether the claims as construed read on the accused product.  *Id.*  "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."  *Id.*

### B.    The Court's Construction of "Expression Of" Requires that the Claimed "Second Data" Be Phenotypic Data

Each Asserted Claim includes the limitation "expression of."  Claim 1 of the '343 Patent claims "second data comprising the effect of nutrition on the *expression of* the genetic descriptor genomic data."  (Ex. 1 at claim 1).  Claims 1, 2, 9 and 10 of the '354 Patent and Claims 1 and 8 of the '587 Patent claim "second data comprising the effect of nutrition on the *expression of* at least one gene in/of/from the genomic map."  (Exs. 3-4).  Claim 1 of the '099 Patent claims "second data comprising the effect of nutrition on the *expression of* genes in the genomic map."  (Ex. 3 at claim 1).

Adopting Hemopet's proposed construction, the Court construed "expression of" to mean "the level of gene product."  (D.I. 76 at 14).  The Court noted in its claim construction order that the specification in each of the Asserted Patents defined gene product:  "[i]n this application, the term 'gene product' means the specific phenotypic characteristic(s) resulting from the expression of the genotype, and may contain certain laboratory test data."  (*Id.* at 13-14).  As such, to satisfy the "expression of" limitations in the second step of the infringement analysis requires that the accused program include the specific phenotypic characteristic(s) data resulting from the expression of the genotype.

As discussed below, phenotypic and genotypic characteristics are different.  mRNA is a genotypic characteristic.  Because the accused RDD program only uses mRNA data, it does not infringe the Asserted Claims.

### C.    mRNA Data Is Not Phenotypic Data

The distinction between phenotype and genotype is fundamental and well

known in the art.  A biology text book describes "phenotype" as "[a]n individual's observable traits." (Ex. 21, <u>Biological Science</u>, 5th Edition at 258; Ex. B to Hall Decl. at ¶184).  It further provides that "[b]iologists refer to the observable traits of an individual, such as the shape of a pea seed or the eye color of a person, as its phenotype (literally, 'show-type')." (*Id.* at 258, Paragraph 2; Ex. B to Hall Decl. at ¶184).  "Genotype," on the other hand, is described as "[t]he alleles [different versions of the same gene are called alleles] found in a particular individual." (*Id.* at 261, Paragraphs 5-6; Ex. B to Hall Decl. at ¶184).  U.S. Pat. Nos. 6,287,254 ("the '254 patent") and 6,730,023 ("the '023 patent"), incorporated by reference in the Asserted Patents, confirm the point:

> "The physical attributes, and other descriptive and health assessment information is generally termed in this application as the phenotypic information.  Genetic disorder information is termed in this application as the genotypic information.  Generally, these are two distinct and differing sets of information."

(Ex. 19, '254 patent at 1:44-49; Ex. 20, '023 patent at 1:35-40).

Dispositive on the issue before the Court, mRNA and RNA expression are genotypic information, not phenotypic.  Hemopet's expert Dr. Sutter admitted that "***RNA expression [mRNA] is one example of information related to the organism's genotype as contemplated by the patent***."   (Ex. 6, 6/19/14 Sutter Report at ¶ 83) (emphasis added).

### D.   The Accused Second Data in the RDD Program Is mRNA Data, Not Phenotypic Data

Hemopet asserts that Hill's satisfies the second data element in two ways.  First, Hemopet contends that "[t]he results of Hill's testing of various ingredients and nutrients *in vitro* constitutes the claim [sic] second data."  (*Id.* at ¶86).  Second, Hemopet contends that "[t]he results of Hill's *in vivo* testing fall within the scope of the claimed 'second data.'"  (*Id.* at ¶ 88).  However, both Hill's *in vitro* and *in vivo* tests measure mRNA levels, which by Hemopet's own admission is genotypic, not

phenotypic data, and thus outside the scope of the construed claims.

### 1. Hill's *in vitro* ingredient studies measure mRNA

Gene expression as measured by mRNA is the only response measured and collected during Hill's *in vitro* ingredient cell culture studies. (*See, e.g.*, Ex. 9, D. Jewell Dep. at 25:9-18, 31:15-20, 33:25-34:2; Ex. B to Hall Decl. at ¶¶65-67, 73-74, 77). Neither phenotypic characteristics nor phenotypic measurements are determined or collected as part of the *in vitro* ingredient cell culture studies. (*Id.*)

Hill's conducts the *in vitro* ingredient studies using cell lines. (Ex. 9, D. Jewell Dep. at 26:2-17). Hill's ingredient studies evaluate the effect of an individual ingredient extract on cell lines as measured by the change in mRNA levels of the cell lines. (Ex. 9, D. Jewell Dep. at 25:9-18, 28:1-23, 31:15-20, 33:25-34:2).

To analyze the ingredient's effect on the cell lines, Hill's uses Affymetrix GeneChips to measure the intensity of mRNA present in both samples (treated and non-treated samples). (Ex. 9, D. Jewell Dep. at 31:15-20, 33:25-34:2; Ex. 8, S. Malladi Dep. at 20:6-21:3). No phenotypic characteristics data are measured in connection with the ingredient cell culture tests. (Ex. 9, D. Jewell Dep. at 25:9-18, 28:1-23; 31:15-20, 33:25-34:2; Ex. B to Hall Decl. at ¶¶65-67, 73-74, 77).

### 2. Hill's *in vivo* ingredient studies measure mRNA

Hill's performs feeding studies where it feeds prototype investigational diets to populations of animals, and conducts tests to assess the efficacy of those diets. (Ex. 9, D. Jewell Dep. at 61:4-62:1, 62:21-63:10). Hill's *in vivo* feeding studies measure the gene expression profiles of animals. (*Id.*) The gene expression measurements collected from the *in vivo* feeding tests consist of mRNA levels (*i.e.*, gene expression data). (Ex. 9, D. Jewell Dep. at 61:4-62:1, 62:21-63:10; *see also* Ex. B to Hall Decl. at ¶¶98-100). No phenotypic characteristics data are measured as part of the gene expression analysis. (*Id*.)

Accordingly, this Court should grant summary judgment that Hill's does not

infringe the Asserted Claims as the Hill's program lacks the required second data.

## V.   PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT IS WARRANTED

In order to avoid confusion at trial and streamline the issues, Hill's requested that Hemopet stipulate that: (1) Hill's acts of using, selling, or offering for sale pet food products do not infringe the Asserted Claims; (2) the process that Hill's uses to manufacture pet food products does not infringe the Asserted Claims; and (3) Hill's identification of key ingredients prior to the issuance of the Asserted Patents does not infringe the Asserted Claims.  Hemopet refused to agree to any of the stipulations, seemingly to maintain a damages theory based on Hill's pet food products.

### A.    Hill's Pet Food Products Do Not Infringe

The act of using, selling, or offering for sale Hill's accused pet food products does not infringe the Asserted Claims.

This is plain on a review of the Asserted Claims, which are directed to determining and preparing a dog or cat food recipe—not the use or sale of pet food products.  For example, the claimed systems and methods require analyzing data using a computer—there can be no dispute that a bag of pet food does not include a computer, or the first or second data as required by each of the Asserted Claims. (*See, e.g.*, Ex. 1 at claim 1).  Moreover, when asked, Hemopet's expert admitted that pet food does not infringe the Asserted Claims:

> Q    Does Hill's act of selling or offering for sale pet food in the marketplace infringe any of the asserted claims?
>
> A    The act of selling dog or pet food in the marketplace considered in a vacuum without a context of where the bag came from, how it got to have nutrient composition in the bag, the act of selling the bag at Petsmart, money changes hands, is not an act that I read  is disclosed in the claim      language. That act considered in vacuum without a   -- without a  broader  context  is  not  an  infringing act, in my opinion.

Hill's Pet Nutrition's Memorandum In Support of Its        23        Case No. SACV 12-01908-(JLS-JPRx)
Motion for Summary Judgment of Patent Invalidity
Under 35 U.S.C. §§ 101, 102 and Non-Infringement

(Ex. 12, Sutter Dep. at 100:23-101:9; *see also id.* at 100:14-19).  By Hemopet's own admissions, there is no dispute that Hill's pet food products do not infringe.

However, notwithstanding that admission, Dr. Sutter's expert report states that "Hill's infringes … by making, using, selling, or offering for sale certain products developed through the use of Hill's RDD process."  (Ex. 6, 6/19/14 Sutter Report at ¶17).  That statement, Dr. Sutter's resistance to agreeing to this point at his deposition, and Hemopet's refusal to stipulate require summary judgment to avoid jury confusion and streamline the trial.   Thus, Hill's moves for summary judgment that the act of using, selling, or offering for sale Hill's pet food does not infringe.

### B.    Manufacturing Pet Food Does Not Infringe the Asserted Claims

Hill's also asked Hemopet to stipulate that Hill's process of manufacturing pet food does not infringe any of the Asserted Claims.   The Asserted Claims recite elements specific to the creation of a formula or composition (*i.e.*, a recipe) for a pet food, as distinguished from—*after* a recipe exists—gathering the ingredients and manufacturing the actual food.  Hemopet cannot dispute that its Asserted Claims do not cover that manufacturing process.  The Asserted Claims include a number of limitations that Hill's manufacturing process does not do, for example, comparing the first and second data to identify the potential nutrients or caloric compositions for dog and cat food.  Indeed, the Court recognized during the claim construction process that the Asserted Claims are not directed to manufacturing pet foods: "'[m]anufacture' has an association with large-scale, routine, industrial production, which is inconsistent with the individualized assessments of particular canines and felines contemplated by the patents at issue."  (D.I. 76 at 16).  Hemopet did not even attempt to show that Hill's pet food manufacturing process infringed.  Thus, summary judgment that Hill's process of manufacturing pet food does not infringe is appropriate.

### C.   Hill's Pre-Patent Identification of The Key Ingredients Does Not Infringe

Hill's used RDD to identify the key ingredients in the Accused Products by 2009—approximately two years before the first Asserted Patent issued.  Infringement cannot be based on activities that occur before the issuance of a patent.  *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007) (summary judgment of no infringement when steps of claimed method were performed prior to issuance).

It is undisputed that Hill's used RDD—in 2009—to identify three key ingredients—tomato pomace, carrot powder, and coconut oil—in Hill's accused Metabolic pet food.   Hill's established the Global Nutritional Standard for Metabolic—including those ingredients—*before* any of the Asserted Patents issued. (Ex. 10, K. Hahn Dep. at 97:1-9, 96:17-22, 106:4-21).  Based on those pre-issuance formula guidelines, Hill's then used the tomato pomace, carrot powder, and coconut oil as key ingredients in four other products associated with Hemopet's infringement claims, Hill's Science Diet Perfect Weight, Ideal Balance Slim & Healthy, Science Plan VetEssentials Neutered Dog, and the proposed multisystem pet food.  (Ex. 10, K. Hahn Dep. at 106:4-21, 108:5-12).  As in *Monsanto*, Hill's pre-issuance RDD use to identify the three key ingredients cannot infringe.   *Monsanto*, 503 F.3d at 1360 ("statute does not reach pre-issuance use of the later-patented process").

## VI.   CONCLUSION

For the foregoing reasons, Hill's respectfully requests that the Court GRANT its Motion for Summary Judgment of Patent Invalidity under 35 U.S.C. §§ 101, 102 and Non-Infringement, as set forth herein.

Respectfully submitted,

DATED:  September 18, 2014          KIRKLAND & ELLIS LLP


                                    _/s/ Bryan S. Hales_____
                                    Bryan S. Hales, P.C.

                                    *Attorneys for Defendant*
                                    *Hill's Pet Nutrition, Inc.*

                                    Philip T. Chen (State Bar No. 211777)
                                    philip.chen@kirkland.com
                                    KIRKLAND & ELLIS LLP
                                    333 South Hope Street
                                    Los Angeles, California 90071
                                    Telephone:  (213) 680-8400
                                    Facsimile: (213) 680-8500

                                    Bryan S. Hales, P.C. *(pro hac vice)*
                                    bryan.hales@kirkland.com
                                    Eric D. Hayes *(pro hac vice)*
                                    eric.hayes@kirkland.com
                                    Thomas W. Osier  *(pro hac vice)*
                                    tosier@kirkland.com
                                    Ferlillia V. Roberson *(pro hac vice)*
                                    Ferlillia.roberson@kirkland.com
                                    KIRKLAND & ELLIS LLP
                                    300 N. LaSalle
                                    Chicago, IL 60654
                                    Telephone:  (312) 862-2000
                                    Facsimile:  (312) 862-2200

# CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

/s/ *Bryan S. Hales*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

HEMOPET,

       *Plaintiff,*

  v.

HILL'S PET NUTRITION, INC.

       *Defendant.*

**JURY TRIAL DEMANDED**

Case No. SACV 12-01908-(JLS-JPRx)
Action Filed:  November 2, 2012

**[PROPOSED] ORDER GRANTING HILL'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 101, 102 AND NON-INFRINGEMENT**

DATE:  November 14, 2014
TIME: 2:30 p.m.
COURTROOM:  10-A
JUDGE:  The Honorable Josephine Staton

     Defendant Hill's Pet Nutrition, Inc.'s ("Hill's") Motion for SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 101, 102, and NON-INFRINGEMENT came on for hearing this date, all counsel duly appearing.

     After considering the moving and opposition papers, all evidence submitted in support thereof, the arguments of counsel, both written and oral, and all other matters presented to the Court.

     IT IS HEREBY ORDERED THAT Hill's Motion for Summary Judgment Of Patent Invalidity Under 35 U.S.C. §§ 101, 102, and Non-Infringement is GRANTED.


Dated: _____


By: _____
     Honorable Josephine L. Staton
     United States District Court Judge

PROPOSED Order Granting Hill's Motion for
Summary Judgment of Patent Invalidity Under 35
U.S.C. §§ 101, 102  and Non-Infringement

1

Case No. SACV 12-01908-(JLS-JPRx)